INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO NAVAL AIR LODGE 1630, et al., Appellants,

v.

SECRETARY OF THE NAVY, et al.

No. 88–5188.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 16, 1989.

Decided Oct. 5, 1990.

---

Sally M. Tedrow, with whom Brian A. Powers and Francis J. Martorana were on the brief, for appellants.

Curtis E. Hall, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees.

John H. Gullett was on the brief for intervenor.

Before EDWARDS and SENTELLE, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed Per Curiam.

PER CURIAM:

On May 5, 1987, after soliciting bids from outside contractors and comparing them with in-house cost estimates, the Naval Air Station in Jacksonville, Florida, tentatively awarded a contract to perform maintenance and repair work to Apex International Management Services, Inc. ("Apex"). Appellants, an international and a local union representing Federal employees and three of its members, filed an administrative appeal challenging the propriety of the Navy's cost comparison. The appeals officer ultimately ruled in appellants' favor, determining that the contract award should be cancelled and the work performed in-house. This determination was in turn reversed by the Chief of Naval Operations ("CNO"), Vice Admiral Stanley Arthur, who, after having his staff undertake its own cost comparison analysis, ordered award of the contract to Apex. The order was executed and reduction-in-force notices were served on the affected employees.

Appellants then filed this suit in the United States District Court for the District of Columbia alleging a cause of action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. (1988). They argued that the CNO's review and reversal of the appeals officer's decision violated Navy regulations. Appellants sought an order voiding the CNO's action and reinstating the appeals officer's decision. The District Court granted summary judgment for appellees. International Ass'n of Machinists v. Secretary of Navy, Civ. Action No. 88–1258 (D.D.C. June 2, 1988) (order), and id. (D.D.C. June 20, 1988) (memorandum), reprinted in Appellants' Appendix at 27, 30. This appeal followed.

For the reasons which follow, we affirm the District Court's judgment.

The Relevant Regulatory Framework

In August 1983, the Office of Management and Budget ("OMB") issued OMB Circular No. A–76 (Revised) (Aug. 4, 1983) ("Circular A–76" or "Circular"), which directs Executive branch agencies to compare bids solicited from outside contractors with in-house estimates for work which may be performed by outside contractors; if the projected savings from contracting out amounts to at least ten percent of the

estimated in-house cost, the work must be contracted out. Circular A–76, paras. 1, 5 and Supp. Pt. I, Ch. 2, para. G. Circular A–76 also instructs each agency to establish administrative appeals procedures permitting all directly affected parties, including government unions and employees, to appeal a cost comparison decision to an impartial officer organizationally higher than the one who made or approved the original decision. *Id.*, Supp. Pt. I, Ch. 2, para. I.1, I.3, I.7. The Circular declares that the "original appeal decision shall be final unless the agency procedures provide for further discretionary review within the agency." *Id.*, Supp. Pt. I, Ch. 2, para. I.3.

The March 1986 version of the Navy's appeal procedures, which generally tracks the language of the August 1983 version of Circular A–76, is contained in OPNAV Instruction ("OPNAVINST") 4860.7B (Mar. 18, 1986). Appellants claim that, under the applicable appeal procedures, the CNO has no authority to overturn a decision of an appeals officer. In support of this position, appellants rely on section 490.A of OPNAVINST 4860.7B, which reads as follows:

> The objective of the administrative appeal procedure is to ensure that Navy decisions are fair, equitable and per established policy. *Appeal decisions are final and are not subject to review per established policy.*

OPNAVINST 4860.7B, § 490.A (emphasis added).

*Appellees' Claims on Standing and Reviewability*

At the outset, appellees argue that there is no reviewable action before the court. First, appellees contend that appellants lack standing to bring this action, because they do not fall within the "zone of interests" protected by the statutes under which the Circular was issued.[1] Appellees also argue that the Navy's decision whether to contract out or to continue performance in-house is not reviewable under the APA because it is committed to agency

discretion by law. *See* 5 U.S.C. § 701(a)(2) (1988).

Subsequent to oral argument in this case, this court faced the same claims of lack of standing and unreviewability in *National Federation of Federal Employees v. Cheney,* 883 F.2d 1038 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3214, 110 L.Ed.2d 662 (1990). The dispute in *NFFE* focused on the merits of an Army decision to contract work out to a private contractor, and the court held that Federal employees and their representatives lacked standing to challenge the merits of such decisions. *Id.* at 1054. Because the court found no standing, the decision in *NFFE* does not address the question of justiciability under APA section 701(a)(2). *Id.*

It would appear that the holding in *NFFE* is controlling and dispositive of this case, and that appellants' suit must be dismissed for lack of standing. We are disinclined to reach this issue, however, because the parties never have had an opportunity to address it. Normally, we would request supplemental briefing on the applicability of *NFFE;* but, in this case, such a course would be a waste of judicial resources because we are convinced that appellants' claims on the merits must fail in any event. *See National Maritime Union of America v. Commander, Military Sealift Command,* 824 F.2d 1228, 1238, 1240 (D.C.Cir.1987) (Bork, J.) (declining to reach questions of standing or justiciability relating to claims stemming from Circular A–76 because claims clearly failed on their merits).

*The Merits of Appellants' Claims*

 Appellants' entire argument rests upon its interpretation of OPNAVINST 4860.7B, § 490.A, which declares that "[a]ppeal decisions are final and are not subject to review per established policy."

Appellants contend that this provision precluded the CNO from reviewing the decision of the appeals officer, and therefore the CNO's action in doing so was arbitrary

---

1. The Circular was issued under the then-current version of the Budget and Accounting Act of 1921, ch. 18, 42 Stat. 20 (1921) (current version at 31 U.S.C.A. §§ 101 *et seq.* (West 1983 & Supp.1990)), and the Office of Federal Procurement Policy Act Amendments of 1979, Pub.L. No. 96–83, 93 Stat. 648 (1979) (current version at 41 U.S.C. §§ 401 *et seq.* (1988)).

and capricious. Brief of Appellants at 36–49. Appellees, on the other hand, claim that the regulation only denies a right of review to affected parties after the appeals officer issues a decision. Appellees assert, however, that even though there is no such right of party-initiated review, the regulation does not in any manner prevent the officer charged with administering the program from reviewing and revising the decisions of his subordinates. Brief of Federal Appellees at 18–24.

This court "must defer to an agency's interpretation of its own regulations that is not 'plainly inconsistent' with their wording." *National Maritime Union*, 824 F.2d at 1239 (quoting *United States v. Larionoff*, 431 U.S. 864, 872–873, 97 S.Ct. 2150, 2155–2156, 53 L.Ed.2d 48 (1977)). We find that the Navy's interpretation of its instruction is a perfectly reasonable reading of the disputed language, especially in the context of the Navy's Commercial Activities ("CA") program. Therefore, we can find no merit in appellants' position.

Navy regulations provide that the CNO, acting through the Deputy Chief of Naval Operations (Logistics), is "overall manager for the Navy CA program." OPNAVINST 4860.7B, § 140.A(1)(a). The CNO is directed to "[m]onitor the overall progress of the program and direct ... cost comparison analysis efforts." *Id.* § 140.A(1)(d). The CNO is responsible for approving "all conversions of [commercial activities from in-house performance to contract performance] *prior* to contract award. *Id.* § 150.B(2) (emphasis added). Navy regulations also require that "*after completion* of the administrative appeal process," the appeals officer must file a report containing detailed information about the solicitation and review process with the CNO. *Id.* § 425.E(1) (emphasis added). A final decision either to contract out or to cancel a bid solicitation and continue in-house performance requires the CNO's authorization. *Id.* § 425.E(2). The regulations thus clearly recognize that the CNO has the final word on administration of the CA program.

Appellants' suggested reading of the regulation would impair the CNO's exercise of his authority by precluding him from revising lower officers' decisions. This, in turn, would undermine his ability to maintain uniformity in the administration of the program in contravention of the first sentence of the very instruction upon which appellants rely. That sentence provides that "[t]he objective of the administrative appeal procedure is to ensure that Navy decisions are fair, equitable *and per established policy.*" OPNAVINST 4860.7B, § 490.A (emphasis added); *see also* OMB Circular A–76, Supp. Pt. I, Ch. 2, para. I.2 ("appeals procedure is to provide an administrative safeguard to ensure that agency decisions are fair and equitable and in accordance with procedures in [the cost comparison part of the Circular]"). If the regulation were interpreted to preclude the central management authority from having the power to revise lower officials' decisions, diversity and inconsistency in the appeals officers' decisions, and thus in the administration of the CA program, would be inevitable. Not only uniformity would be undermined, however, for appellants' reading would also lead to an anomalous situation in which the responsible officer would be divested of the power to correct erroneous decisions of his subordinates. This would be a curious amendment to the Navy's CA program, one that this court is not authorized to make.

Finally, appellants argue that Circular A–76 requires agencies wishing to reserve the type of discretionary review employed by the CNO here to indicate such intent in their appeals procedures. *See* Circular A–76, Supp. Pt. I, Ch. 2, para. I.3 ("original appeal decision shall be final unless the *agency procedures provide* for further discretionary review within the agency") (emphasis added); Brief of Appellants at 36–37, 40. Since the provisions granting the CNO final authority with regard to appeals decisions do not appear in the OPNA-VINST 4860.7B section governing administrative appeals, appellants argue that they do not satisfy the Circular's requirement of an express review provision. We reject this argument. In particular, we note that Circular A–76 does not specify where agency procedures providing for discretionary

review must appear. The provisions quoted above covering the CNO's authority over the appeals procedure are all found in OPNAVINST 4860.7B, the set of instructions which, *in toto*, implement Circular A–76. The fact that these provisions do not appear in the section detailing appeals procedures does not mean that they are not "agency procedures provid[ing] for further discretionary review." The review in this case clearly was taken pursuant to a discretionary internal review procedure prescribed in OPNAVINST 4860.7B; thus, the Navy's action comported with the requirements of Circular A–76.

*Conclusion*

The Navy's reading of its own instruction implementing Circular A–76 is consistent with the language of the regulation; furthermore, there is no evidence that the Navy's position is at odds with any previous interpretation of that regulation. We therefore affirm the District Court's grant of summary judgment for appellees.

*So Ordered.*